**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**KAYLE BARRINGTON BATES**
Plaintiff,

    v.

**RON DeSANTIS**, Governor,
    in his official capacity.

_____/

CASE NO. 5:25-cv-192

**EMERGENCY**
**INJUNCTION SOUGHT**

EXECUTION OF STATE
**DEATH SENTENCE SET:**
**AUGUST 19, 2025 @ 6:00 P.M.**

**42 U.S.C. § 1983 COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I. NATURE OF ACTION**

1. This is a civil action brought under 42 U.S.C. § 1983 seeking injunctive relief from execution in the face of "a stark pattern . . . of discriminatory intent"[1] in violation of Plaintiff Kayle Barrington Bates' federal constitutional rights to equal protection and freedom from cruel and unusual punishment.

2. Mr. Bates, a death-sentenced Florida prisoner, seeks declaratory relief, injunctive relief, and a stay of his scheduled August 19, 2025, execution, pending this Court's review of this action and, ultimately, Defendant's provision of a warrant selection process that is no longer infected with racial

---

[1] *McCleskey v. Kemp*, 481 U.S. 279, 293 (1987).

1

discrimination and arbitrariness, and comports with the United States Constitution.

## II. PARTIES TO THE COMPLAINT

**PLAINTIFF**

3. Kayle Barrington Bates is a prisoner on Florida's death row pursuant to his 1983 conviction for first-degree murder and associated charges originating from Bay County, and his 1995 resentencing. *Bates v. State,* 465 So. 2d 490 (Fla. 1985); *Bates v. State,* 506 So. 2d 1033 (Fla. 1987), *cert denied*, *Bates v. Florida*, 484 U.S. 873 (1987); *Bates v. State*, 750 So. 2d 6 (Fla. 1999), *cert denied*, *Bates v. Florida*, 531 U.S. 835 (2000). He is a citizen of the United States and a resident of the State of Florida. On July 18, 2025, Governor Ron DeSantis signed a warrant for Mr. Bates' execution, setting it for August 19, 2025, at 6:00 pm at Florida State Prison, in Raiford, Florida.

**DEFENDANT**

4. Defendant Ron DeSantis is the Governor of Florida. Governor DeSantis is responsible for the selection, timing, and signing of Florida death warrants. He is sued in his official capacity.

2

### III. JURISDICTION AND VENUE

**JURISDICTION**

5. This action arises under federal statute and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3). This action is brought pursuant to 42 U.S.C. § 1983. This Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201(a), § 2202, and Federal Rule of Civil Procedure 65.

**VENUE**

6. Pursuant to 28 U.S.C. § 1391(b), venue is appropriate in the Northern District of Florida because Defendant, Governor Ron DeSantis, resides in this district and, as discussed below, a substantial part of the events or omissions giving rise to this claim occurred in this District.

### IV. RELEVANT FACTUAL AND PROCEDURAL HISTORY

#### A. Racial Data Regarding Executions

7. Although the most recent data from the United States Department of Justice shows that less than 41% of homicide victims are white,[2] since the

---

[2] Another recent study memorialized by the Council on Criminal Justice found that "[t]he rate of homicide victimization for Black males was more than eight times higher than for White males" and "Black female rates were four times higher than rates for White females[.]" Council on Criminal Justice, *Trends in Homicide: What You Need to Know* (Dec. 2023), available at https://counciloncj.org/homicide-trends-report/ (last visited July 27, 2025).

implementation of the modern death penalty in 1976, over three-quarters of executions in the United States (76%) have been of defendants whose crimes had white victims. *Compare* Bureau of Justice Statistics, *Homicide Victimization in the United States, 2023*, available at https://bjs.ojp.gov/document/hvus23.pdf (last visited July 19, 2025), *with* Death Penalty Policy Project, *Surge in U.S. Executions Exhibits Huge White-Victim Preference*, available at https://dppolicy.substack.com/p/surge-in-us-executions-exhibits-huge (last visited July 21, 2025).[3]

8. Of the 114 Florida executions that have taken place since capital punishment was reinstated in 1976, only 14 did not involve a white victim. In other words, nearly 88% of Florida's modern executions have been for cases with white victims. Of the executions that have occurred since Governor Ron DeSantis took office, over 94% have been for white victims. And of the execution warrants signed by Governor DeSantis, the number rises to 95%. *See* Florida Department of Corrections, *Execution List: 1976 – Present*, available at https://www.fdc.myflorida.com/institutions/death-row/execution-list-1976-present (last visited July 20, 2025).[4]

---

[3] Calculations in this pleading have been updated to reflect executions postdating June 30, 2025.

[4] In addition to Mr. Bates' case, white victims were all present in the cases of James Dailey, whose 2019 execution date was stayed; and Edward Zakrzewski, whose

4

9. Of the 14 Florida executions since 1976 that did not involve a white victim, only two had a white defendant. Put differently, less than 2% of these executions were for white individuals who killed non-white individuals—and none were for a white person's killing of a Black person.

10. Nationally, a Black defendant in the United States is well over ten times more likely to be executed when the victim is white than when the victim is Black. A Black defendant is more than twice as likely as a white defendant to be executed for killing a white victim. And, conversely, white defendants are over two-and-a-half times less likely to be executed for killing a Black victim than a white victim. *See* Death Penalty Policy Project, *Surge in U.S. Executions Exhibits Huge White-Victim Preference*, available at https://dppolicy.substack.com/p/surge-in-us-executions-exhibits-huge (last visited July 21, 2025). When demographics are compared for the 1,633 individuals who have been executed since 1976, it demonstrates that a Black death-sentenced individual is approximately fifteen times more likely to be executed for killing a white person than a white defendant with exclusively Black victims. *See* Death Penalty Information Center, *Searchable Execution Database*, available at https://deathpenaltyinfo.org/facts-and-

---

execution is scheduled for July 31, 2025.

research/data/executions (last visited July 21, 2025). In Florida, this calculation cannot be performed, because in the history of the modern death penalty, no white defendant solely convicted of killing a Black victim has been executed.

### B. Rules and Statutes Governing Execution Warrant Selection in Florida

11. Under Florida's death penalty scheme, the execution warrant selection process is solely within the purview of the Governor.

12. Pursuant to Fla. Stat. § 922.052(2)(a), the Governor is notified in writing when a person convicted and sentenced to death has completed their appeals as of right in state and federal court, or the time permitted for filing a habeas corpus petition in federal court has expired.

13. Pursuant to Fla. Stat. § 922.052(3), a death-sentenced individual may not be executed "until the Governor issues a warrant…directing the warden to execute the sentence at a time designated in the warrant."

14. Pursuant to Fla. Stat. § 922.052(2)(b)-(c), the Governor may, at his sole discretion, sign an execution warrant for any individual whose executive clemency process has concluded.

15. Pursuant to Rule 15 of the Rules of Executive Clemency, the Governor is responsible for initiating, directing, and concluding the clemency process. Thus, the timing of a death warrant is dependent on the Governor's

6

discretionary timing of clemency proceedings, which have no limitations other than what the Governor decides. Clemency proceedings and an execution warrant could immediately issue; or an individual could remain on death row for decades, never progressing any closer to an execution date.

16. Half of the approximately 267 individuals on Florida's death row have exhausted their appeals as of right, and are eligible for clemency proceedings and the signing of an execution warrant.

17. On July 18, 2025, Governor DeSantis denied executive clemency and scheduled Mr. Bates' execution for August 19, 2025.

## V. CAUSES OF ACTION

18. Mr. Bates hereby incorporates by reference paragraphs 1-17 as though fully set forth herein.

19. As described in more detail in Mr. Bates' accompanying memorandum in support of this complaint,[5] Defendant violated Mr. Bates' federal rights to equal protection and freedom from cruel and unusual punishment by selecting Bates' execution warrant in a manner that is unconstitutionally racially discriminatory or arbitrary.

---

[5] This complaint provides the factual background and basis for the cause of action. Mr. Bates has filed a separate memorandum outlining the legal support for his positions, in addition to a motion for a stay of execution, so that this Court may consider these arguments without the exigencies of an active death warrant.

**A. Defendant Violated Mr. Bates' Equal Protection Rights**

20. The United States Supreme Court has repeatedly emphasized that the "clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." *Students for Fair Admissions, Inc., v. President and Fellows of Harvard College*, 600 US. 181, 206 (2023) (quoting *Loving v. Virginia*, 388 U.S. 1, 10 (1967)). Even an action which is "nondiscriminatory on its face may be applied in such a way as to violate the Equal Protection Clause of the Fourteenth Amendment." *Furman*, 408 U.S. at 257 (Douglas, J., concurring in the judgment). And, the Supreme Court has acknowledged that statistics are acceptable proof of intent to discriminate in certain limited contexts where the statistical proof of disparities is "stark[.]" *McCleskey v. Kemp*, 481 U.S. 279, 293-94, 294 n.12 (1987).

21. The selection and issuance of Mr. Bates' execution warrant did not comport with the constitutional guarantee of Equal Protection. Although facially race-neutral, statistical data demonstrates that the racial disparity in the Florida execution warrant selection process is so egregious, it constitutes "exceptionally clear proof" of discriminatory intent. *McCleskey*, 481 U.S. at 297. That is, the statistical proof of racial disparity in the warrant selection process in Florida is "stark." *Id*. at 293.

22. In 1987, the raw numbers regarding the death penalty process as a whole showed that defendants charged with killing white victims were approximately 11 times as likely to receive the death penalty as those killing Black victims. After taking account of 39 nonracial variables such as the aggravation level of the offense, defendants charged with killing white victims were 4.3 times more likely to receive a death sentence as defendants charged with killing Black victims. *See McCleskey*, 481 U.S. at 287 (discussing the Baldus study). And, Black defendants were 1.1 times more likely to receive a death sentence as other defendants. *Id*.

23. The present numbers, particularly in Florida under the DeSantis administration specifically, are even worse. Because Mr. Bates and those to whom he is similarly situated have all been convicted of aggravated murder and have completed their appeals as of right, variables that were of concern in the Baldus study have already been controlled, and the raw numbers are reliable. Nationally, those numbers show that a Black defendant convicted of killing a white victim is fifteen times more likely to be executed than a white defendant convicted of killing a Black victim. In Florida, under Governor DeSantis' administration, they show that a defendant who is convicted of killing a white victim is over fifteen times more likely to be executed than a defendant whose victims are not white. And, because Governor DeSantis has

not executed a single white defendant for killing a non-white defendant, the statistical disparity is incalculable. That incalculability, in and of itself, is a meaningful result demonstrating racial discrimination in the execution warrant selection process giving rise to Mr. Bates' imminent execution date.

24. Mr. Bates' execution warrant is the result of an executive decision-making process that rendered his execution well over ten times more likely than a similarly situated individual whose victim was not white; and more than twice as likely to be executed than an otherwise similarly situated white individual who killed a white person. When both the race of the defendant and that of the victim are taken into account, the statistics show he is being treated even more disparately. Mr. Bates is being impermissibly treated differently than similarly situated individuals on account of his race and the race of the individual for whom he was convicted of killing.

25. As a result of Defendant DeSantis' actions in intentionally selecting and signing his death warrant despite knowing it to be racially discriminatory in nature, Mr. Bates suffered deprivations of the rights secured to him by the Eighth and Fourteenth Amendments of the United States Constitution.

**B. Defendant Violated Mr. Bates' Rights Under the Eighth and Fourteenth Amendments to be Free From Cruel and Unusual Punishment**

26. United States Supreme Court caselaw has explained that it appears "incontestable that the death penalty inflicted on one defendant is 'unusual' if it discriminates against him by reason of his race…or if it is imposed under a procedure that gives room for the play of such prejudices." *Furman*, 408 U.S. at 242 (Douglas, J., concurring in the judgment). And, there is "no more sanctity" where this occurs in practice rather than explicitly. *Id*. at 256.

27. Race is a remarkably strong predictor of whether a capital defendant will actually be executed. Nearly 88% of Florida's modern executions have been for cases with white victims. Of the 14 Florida executions since 1976 that did not involve a white victim, less than 2% of these executions were for white individuals who killed non-white individuals—and 0% were for a white person's killing of a Black person. Although Defendant DeSantis has been on notice of the problems with Florida's vastly disparate implementation of capital punishment, rather than take any steps to remedy it, he instead greatly exacerbated that disparity. Of the executions that have occurred since he took office—each of which has been solely within his discretion in terms of selection and timing—over 94% have been for white victims. That number is even higher when pending executions are taken into account. Regardless of

11

Defendant's actual motive for signing Mr. Bates' execution warrant, the resulting punishment is arbitrary in fact.

28. The statistics surrounding Mr. Bates' execution warrant are so profound as to demonstrate arbitrariness and capriciousness in Florida's execution warrant selection process. Florida is vastly choosing to kill those who have committed crimes against white people—an egregiously racially disparate pattern that has been substantially exacerbated during Defendant DeSantis' governorship. Mr. Bates must not "live or die depending on the whim of one man[.]" *Furman*, 408 U.S. at 253 (Douglas, J., concurring in the judgment). Thus, regardless of the root cause, there remains a constitutionally impermissible risk of racial bias under the Eighth Amendment which Governor DeSantis is not only failing to remedy but knowingly perpetuating via the selection of Mr. Bates' execution warrant.

## VI.    REQUEST FOR RELIEF

29. Mr. Bates requests a preliminary injunction prohibiting Defendant from executing him until this Court has had the opportunity to meaningfully consider his federal constitutional arguments. Mr. Bates' meritorious cause of action should not be decided in the context of an active death warrant.

30. Mr. Bates requests that this Court declare that Defendant violated his federal constitutional rights to equal protection and the freedom from cruel and

unusual punishment, which are guaranteed by the Eighth and Fourteenth Amendments.

31. Mr. Bates finally requests that this Court grant a permanent injunction barring Defendant from executing him until Defendant can show compliance with the Eighth and Fourteenth Amendments by implementation of a warrant-selection process that is not racially discriminatory or arbitrary.

## VII.  CERTIFICATION

32. Christina Mathieson, attorney for Plaintiff Bates in the above-entitled action, certifies that to the best of her knowledge and belief, the facts set forth in this complaint are true and correct.

Respectfully submitted,

/s/ Christina Mathieson
CHRISTINA MATHIESON
KATHERINE A. BLAIR
Office of the Federal Defender for
the Northern District of Florida
227 N. Bronough St., Ste. 4200
Tallahassee, FL 32301-1300
(850) 942-8818
christina_mathieson@fd.org
katherine_blair@fd.org

*Counsel for Mr. Bates*

13