IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EXECUTION SCHEDLUED FOR TUESDAY,
AUGUST 19, 2025, AT 6:00 P.M. EST

KAYLE BARRINGTON BATES,

*Petitioner*,

v.                                                    Case No.: 5:25-cv-00192
                                                                    CAPITAL CASE

RON DESANTIS,
Governor of Florida,
in his official capacity,

*Defendant.*

_____/

<u>DEFENDANT DESANTIS' MOTION TO DISMISS</u>

On July 29, 2025, Kayle Barrington Bates, represented by the Capital Habeas

Unit of the Office of the Federal Public Defender of the Northern District of Florida

(CHU-N), filed a 42 U.S.C. § 1983 complaint against Governor Ron DeSantis. The

complaint raises an equal protection and an Eighth Amendment arbitrary challenge

to the Governor's warrant selection process alleging racial discrimination. Basically,

Bates raises a claim based on *McCleskey v. Kemp*, 481 U.S. 279 (1987), as to the

Governor's death warrant selection.

-1-

The complaint should be dismissed for three reasons. First, the complaint is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because it seeks to enjoin Bates' execution, which is the carrying out of his death sentence, and therefore, any such challenge must be raised in a habeas petition, not in a § 1983 action. Second, even if it were a proper § 1983 action, it should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). And third, it should be dismissed for being nothing more than an attack on well-settled precedent under *Bucklew v. Precythe*, 587 U.S. 119, 151 (2019).

## Barred by *Heck*

The complaint should be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . then the complaint must be dismissed." *Id*. at 487. Because an execution is the carrying out of a death sentence, in challenging his execution, Bates is necessarily challenging his underlying death sentence. Therefore, both of his claims are *Heck* barred. *Kitchen v. Whitmer*, 106 F.4th 525, 543–44 (6th Cir. 2024) (concluding an Eighth Amendment challenge to a parole statute was *Heck* barred because the court cannot grant him the relief sought "without undercutting his sentence" which "lies in the province of habeas, not § 1983").

In *Hill v. McDonough*, 547 U.S. 573, 583 (2006), the Supreme Court distinguished between proper § 1983 actions challenging only the method of execution and improper § 1983 actions challenging the sentence itself. The Supreme Court explained that if "a grant of relief to the inmate would necessarily bar the execution," the claim must be raised in a federal habeas petition rather than in a § 1983 action. *Id*. at 583.

Here, Bates seeks an order that would necessarily bar his execution. So, under *Hill*, the only appropriate vehicle for Bates to raise such a claim is in a federal habeas petition under 28 U.S.C. § 2254, not in a § 1983 action.

Bates, in his memorandum of law, seeks a "permanent" injunction barring his execution. (Doc. #2 at 5). He seeks "injunctive relief" regarding the warrant selection process which he admits was a "necessary precursor" and "triggering event" to "carrying out" his "death sentence." (Doc. #2 at 34). Bates asks "that Defendant not be allowed to execute him." (Doc. #2 at 34). Where, as here, a plaintiff in a § 1983 action seeks to enjoin his execution permanently, then the actions is a challenge to the death sentence itself, which may only be raised in a habeas petition.

While method-of-execution challenges are properly raised in § 1983 actions, warrant selection claims are not. *Nance v. Ward*, 597 U.S. 159, 163 (2022). In method-of-execution challenges, the capital plaintiff is asking "only for a change in

implementing the death penalty" and an order granting that relief "would not prevent the State from executing him." *Nance*, 597 U.S. at 168-69. But a "claim should go to habeas" if granting the prisoner relief would "necessarily prevent the State from carrying out its execution." *Id*. at 168.

Both the equal protection claim and Eighth Amendment arbitrariness claim "should go to habeas." Indeed, the seminal case of *McCleskey v. Kemp*, 481 U.S. 279 (1987), was a § 2254 habeas case, not a §1983 action.

While he boldly asserts otherwise, his § 1983 action does, in fact, challenge the carrying out of his sentence. (Doc. #2 at 7-8). And while the Governor agrees that a death sentence and an execution are legally and temporally distinct events, that distinction has nothing to do with *Heck* bars. Bates' § 1983 action would necessarily invalidate his execution which is the final step of his death sentence. Because Bates seeks to preclude the execution of his death sentence, any such challenge must be raised in a habeas petition. Under *Hill* and *Nance*, the § 1983 action is *Heck* barred.

### Failure to State a Claim

Alternatively, even if it was a proper § 1983 action, both the equal protection and Eighth Amendment claims warrant dismissal for failure to state a claim for relief under Rule 12(b)(6).

-4-

<u>*McCleskey* applied to warrant selection</u>

Bates is making a claim based on *McCleskey v. Kemp*, 481 U.S. 279 (1987), transposed from the earlier prosecution and sentencing stage to the later warrant selection stage. In *McCleskey*, however, the Supreme Court rejected both an equal protection claim and an Eighth Amendment arbitrariness claim.

In *McCleskey*, a black capital defendant, who had killed a white police officer during a robbery, sought habeas relief alleging that Georgia's capital sentencing scheme was being applied in a racially discriminatory manner. McCleskey involved a statistical study, the Baldus study, regarding the imposition of death sentences in murder cases in Georgia that concluded that decisions to seek and impose the death penalty were racially skewed. The study found that prosecutors sought the death penalty much more often in cases involving black defendants with white victims than in cases involving white defendants with black victims. The study also found that defendants charged with killing white victims were 4.3 times more likely to receive a death sentence than defendants charged with killing black victims. *Id*. at 287. The study found that prosecutors sought the death penalty in 70% of the cases involving black defendants and white victims, 32% of the cases involving white defendants and white victims, 15% of the cases involving black defendants and black victims, and 19% of the cases involving white defendants and black victims. *Id*. at 287. The Court

assumed that the study was valid statistically.

The *McCleskey* Court held that a capital defendant must prove that the decisionmakers in his case acted with discriminatory purpose. *McCleskey*, 481 U.S. at 292. In defining discriminatory purpose, the Court explained that McCleskey would have to prove that the Georgia Legislature enacted or maintained the death penalty statute because of an anticipated racially discriminatory effect. *Id*. at 298. Statistical proof must present a "stark pattern" to be the sole proof of discriminatory intent. *Id*. at 293-94 (citing *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266 (1977)). The Court rejected McCleskey's claim because he offered no evidence specific to his own case to support an inference that racial considerations played a part in his sentence. The Court found the study to be insufficient to support an inference that the decisionmakers in McCleskey's case acted with purposeful discrimination. *id.* at 313 (holding "the Baldus study does not demonstrate a constitutionally significant risk of racial bias affecting the Georgia capital sentencing process").

The *McCleskey* Court rejected the equal protection challenge to Georgia's death penalty scheme. *McCleskey*, 481 U.S. at 292-99. The *McCleskey* Court also rejected the Eighth Amendment arbitrariness challenge. *Id.* at 299-320.

This type of claim is akin to a selective prosecution claim as applied to warrant selection rather than prosecution and sentencing. In selective prosecution cases, the

defendant must show both a discriminatory effect <u>and</u> a discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456 (1996). A criminal defendant must present clear evidence of both discriminatory effect and discriminatory purpose. *Armstrong*, 517 U.S. at 456; *United States v. Smith*, 231 F.3d 800, 807-08 (11th Cir. 2000); *United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015). To establish discriminatory effect, the defendant "must show that similarly situated individuals of a different race were not prosecuted" or not selected for a warrant at all. *Armstrong*, 517 U.S. at 465; *Smith*, 231 F.3d at 808; *Brantley*, 803 F.3d at 1271. The comparator must be similarly situated "in all relevant respects." *Brantley*, 803 F.3d at 1272. While all inmates on Florida's death row are "equally death-worthy" that does not mean that they are similarly situated "in all relevant respects." (Doc. #12 at 26). There are other possible legitimate considerations regarding warrant selection, such the inmate's current physical and mental health or the murders being particularly gruesome or involving multiple victims. Showing a discriminatory purpose requires a showing that the decisionmaker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. *Brantley*, 803 F.3d at 1271 (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

In *United States v. Lawrence*, 735 F.3d 385, 438-39 (6th Cir. 2013), the Sixth Circuit, in a federal capital case, rejected a claim of racial bias in the prosecution. Lawrence moved in the district court for discovery regarding the Government's

charging practices in capital cases. *Id*. at 438. The district court denied the discovery motion, ruling that Lawrence's statistical evidence failed to show a discriminatory effect or evidence of discriminatory intent. *Id*. at 439. The court noted that a criminal defendant seeking to prove selective prosecution must show that prosecutorial policy had both a discriminatory effect <u>and</u> discriminatory purpose. *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996), and *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). To show a discriminatory effect, the defendant must show "that similarly situated individuals of a different race were not prosecuted" and "that the decisionmakers in his case acted with discriminatory purpose." *Id*. (citing *Armstrong*, 517 U.S. at 465; *McCleskey*, 481 U.S. at 292). The court observed that a disparity between the percentage of African Americans in the general population and the percentage charged with capital murder, alone, is insufficient to demonstrate that race played a part in the defendant's prosecution and sentencing under *McCleskey*. *Id*. (citing *Keene v. Mitchell*, 525 F.3d 461, 464 (6th Cir. 2008)). Lawrence's support for his claim of selective prosecution asserted that the government sought the death penalty disproportionately for minority-group capital defendants. Lawrence based his claim "exclusively on statistical evidence." *Lawrence*, 735 F.3d at 439. The Sixth Circuit held that the district court correctly determined that the statistical evidence was "inconclusive." *Id*. at 439. The court, alternatively, held that Lawrence "undisputedly" had not shown a "discriminatory

purpose" because he produced "no evidence that decisionmakers in his case acted with discriminatory purpose or that similarly situated individuals" of a different race were not prosecuted in federal court. *Id*.

The observations and holdings of the Sixth Circuit in *Lawrence* apply equally to this claim related to warrant selection, except the statistical evidence here conclusively shows that Governor DeSantis' warrant selection process has no discriminatory effect because there is no significant disparity between the percentage of black death row inmates selected for a warrant and the black population of the State of Florida. There is neither a discriminatory effect nor a discriminatory purpose in the Governor's warrant selection.

Bates cites nothing other than statistics to support his claims. He points to no statements or actions by Governor DeStantis proving any discriminatory purpose or intent. Indeed, there no allegations of any racial bias on the part of the Governor other than the incomplete statistics provided. On that basis alone, the § 1983 action should be dismissed under *McCleskey* and *Armstrong*.

Implausible on its face

Neither the equal protection claim nor the Eighth Amendment arbitrariness claim are plausible.

Of the twenty-one inmates that Governor DeSantis has selected for execution

since being in office, four are black. Those four warrants were for Curtis Windom, Kayle Bates, Michael Bell, and Louis Gaskin. So, 19% of the warrants signed by Governor DeSantis have been for black inmates, while 15% of the population of Florida is black. U.S. Census Bureau, 2020 Census.[1]

While statistical evidence alone is rarely sufficient to support an equal protection claim, statistical evidence alone can definitively rebut an equal protection claim and these figures do just that. *Keene v. Mitchell*, 525 F.3d 461, 464 (6th Cir. 2008). The slight discrepancy between the figures of 19% and 15% is not statistically significant. And the slight discrepancy certainly is not a "stark pattern," as required by *McCleskey.* These figures totally negate Bates' equal protection claim regarding the race of the inmates selected for a warrant by Governor DeSantis.

Governor DeSantis has also signed warrants involving murder victims who were not white. The three victims murdered by Curtis Windom were black and the two victims murdered by Michael Bell were black. The three victims murdered by Edward Zakrzewski warrant were Asian. So, 8 of the 30 victims associated with the 21 warrants

---

[1]  Census data is an "appropriate and frequent subject of judicial notice." *Hollinger v. Home State Mut. Ins. Co*., 654 F.3d 564, 571–72 (5th Cir. 2011) (citing cases); *United States v. Phillips*, 287 F.3d 1053, 1055, n. 1 (11th Cir. 2002) (taking judicial notice of the U.S. Census data citing *Hollis v. Davis*, 941 F.2d 1471, 1474 (11th Cir. 1991), and *Moore v. Comfed Savings Bank*, 908 F.2d 834, 841 n. 4 (11th Cir. 1990) *United States v. United Bhd. of Carpenters and Joiners of America, Loc. 169*, 457 F.2d 210, 214 n.7 (7th Cir. 1972). A court may take judicial notice in determining a motion to dismiss. *U.S. ex rel. Osheroff v. Humana Inc*., 776 F.3d 805, 811, n. 4 (11th Cir. 2015).

signed by Governor DeSantis were victims of color, which is over 26% of the total victims in all these warrant cases. The five black victims comprised 16% of the total victims in the 21 warrants, which is slighter *greater* than the black population of Florida of 15%. The three Asians victims are 10% of the total murdered victims involved in the 21 warrants, which is three times *greater* than the Asian population of Florida of 2.9%. These figures definitively negate any equal protection claim as to the race of the victims as well.[2]

These statistics are exceptionally strong proof that there is neither discriminatory effect nor intentional discrimination in the warrant selection process. They provide definitive proof of lack of discrimination as to both the race of the inmate selected for a warrant and the race of the murdered victims.

Bates' core complaint is that no warrant has been signed by Governor DeSantis involving a white defendant who murdered a "non-white victim." (Doc. #2 at 24, 27). This is *not* accurate. The Governor signed a warrant for Edward Zakrzewski, who was a white man who murdered his Korean wife and their two half-Korean

---

[2]   All the statistics provided in the accompanying memorandum regarding executions both nationwide and historically in Florida are irrelevant to the actual claim being raised in this §1983 action. This is a claim that Governor DeSantis' warrant selection process violates equal protection and the Eighth Amendment. (Doc. #2 at 9). Bates repeatedly highlights the Governor is the sole decisionmaker at issue and states the Governor "is the only entity whose decision-making is challenged by this claim." (Doc #2 at 25, 27, 28, 33). So, only the statistics related to Governor DeSantis' own 21 warrants selections are relevant.

children with a machete. (No. SC2008-0059 at T. 980-982).[3] Worse, he relies on that inaccurate statement as evidence "so stark" that it allows "for no other conclusion than discrimination." (Doc. #2 at 24).

Critically, Bates failed to provide this Court with any information regarding his assertions coupling the race of the defendant with the race of the victim, specifically black victims. While he accurately states that no warrant has been signed so far for a white defendant who murdered a black victim, he does not provide the number of warrant eligible white defendants who killed a black victim. Nor did he provide this Court with the exact number of warrant eligible inmates on Florida's death row and then compare those figures. Far from being "incalculable," one can calculate the disparity with information documenting the number of white warrant eligible death-row inmates who murdered black victims compared to the number of all defendants who are warrant eligible and then compare that figure to the pairs in the 21 signed warrants. But he did not even attempt to do so in the complaint. The number of white death-row inmates who murdered a black victim who are warrant-

---

[3]   The race of the inmates selected for a warrant as well as the race of the victims in the 21 warrant cases are a matter of public record. Such information is available in the state court record or in the reported opinions. *Lamoureux v. Florida*, No. 23-11997, 2024 WL 1460311, at *1 (11th Cir. Apr. 4, 2024) (noting federal courts may take judicial of state court records citing *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-52 (11th Cir. 2020)).

ready could be as low as one in the approximately 130-140 warrant-ready cases.[4]

Such necessary information was not provided to this Court, as it must be to establish

a plausible claim.

A complaint must contain sufficient factual matter "to state a claim to relief

that is plausible on its face" and plausibility means "more than a sheer possibility."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only a complaint that states a plausible

claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679; *see also Holland*

*v. Carnival Corp.*, 50 F.4th 1088, 1091 (11th Cir. 2022) (affirming the dismissal of

an amended complaint for failure to state a claim under Rule 12(b)(6)). When a

complaint pleads facts that are merely consistent with liability, it "stops short" of

plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Iqbal*, 556 U.S.

at 678; *Holland*, 50 F.4th at 1093. Courts, when deciding a motion to dismiss, are

not required to accept legal conclusions "couched as a factual allegation." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels and conclusions will not do.

*Id*. "Conclusory allegations, unwarranted deductions of facts or legal conclusions

---

[4]   There are such cases on Florida's death row. Stein, a white inmate, murdered two managers of a Pizza Hut, one of whom was black, but the case is not warrant ready. *Stein v. State*, 995 So. 2d 329, 338 (Fla. 2008). Freeman, a white inmate, who murdered two black victims a few weeks apart, is warrant ready. *Freeman v. Atty. Gen. of Fla,* 536 F.3d 1225, 1226 (11th Cir. 2008). The white death-row inmates who murdered black victims, if selected for a warrant, will, no doubt, now raise a reverse-*McCleskey* claim, just as Freeman has already done regarding the rejection of his offer to plead guilty in exchange for a life sentence. *Id*.

masquerading as facts" will not prevent a dismissal under Rule 12(b)(6)). *M.H. On behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1270 (11th Cir. 2024).

The Governor has rebutted any equal protection claim with statistics proving the number of black death-row inmates selected for a warrant is only slightly higher than the black population of the State of Florida and the number of victims of color is greater than the black and Asian populations of the State of Florida. In light of these statistics, Bates' claims are not plausible on their face. One certainly cannot plead facts that are not only *inconsistent* with the claims but, in fact, totally negate the claims. And that is the situation here, given the statistics on the races of the defendants and the races of the victims for the 21 warrants signed by Governor DeSantis.

Nor can one fail to plead the necessary facts at all, as was done in this complaint, by omitting the numbers of black defendants who murdered white victims and are warrant eligible compared to the total number of warrant eligible death row inmates. None of those critical statistics were provided. The factual basis for the paired claim is non-existent.

The complaint should be dismissed for failure to state a claim as a matter of law under *McCleskey* and for not being plausible.

**Settled Precedent and Speculative Theories**

Alternatively, the complaint should be dismissed for being nothing more than an attack on settled precedent under *Bucklew v. Precythe*, 587 U.S. 119 (2019). This Court should do as the United States Supreme Court instructed federal courts to do with meritless or speculative lawsuits brough under § 1983 that are designed merely to delay executions. In *Bucklew*, the Supreme Court urged lower federal courts to protect settled state judgments from undue interference by invoking their equitable powers to dismiss or curtail suits which are speculative or pursued in a dilatory fashion. *Bucklew*, 587 U.S. at 151. The *Bucklew* Court condemned the § 1983 action at issue as "little more than an attack on settled precedent" that was lacking in "essential legal elements" required by Supreme Court precedent. *Id.* at 149. The *Bucklew* Court stated that federal courts should dismiss suits that are based on purely speculative theories without any support in the current caselaw. *Id.* at 151.

The equal protection and Eighth Amendment arbitrariness claims are nothing more than a meritless attack on the "settled" Supreme Court precedent of *McCleskey*. *McCleskey* was decided in 1987, so it has been settled precedent for over 30 years. Bates is making a *McCleskey* claim transposed from the prosecution and sentencing stage to the warrant selection stage. But the Eighth Amendment arbitrariness claim failed in *McCleskey*, and it has even less relevance to the later stage of warrant selection. *McCleskey*, 481 U.S. at 299-308. The *McCleskey* Court concluded that

-15-

because McCleskey's death "sentence was imposed under Georgia sentencing procedures that focus discretion on the particularized nature of the crime and the particularized characteristics of the individual defendant," the Court may "lawfully may presume that McCleskey's death sentence was not 'wantonly and freakishly' imposed" and "thus that the sentence is not disproportionate within any recognized meaning under the Eighth Amendment." *Id*. at 308. Both claims are meritless under *McCleskey*. These two challenges are simply an "attack on settled precedent" lacking in "essential legal elements" the likes of which the Supreme Court condemned in *Bucklew*.

And the Eighth Amendment arbitrariness claim, additionally, is speculative. No constitutional provision prohibits a Governor, faced with three capital defendants guilty of equally heinous murders, from randomly selecting one of the three for the next execution. Randomness can be viewed as the fairest means of selection. For example, with the military draft. Ronen Perry & Tal Z. Zarsky, "*May the Odds Be Ever in Your Favor*": *Lotteries in Law*, 66 ALA. L. REV. 1035 (2015) (noting the prevalence of lotteries in law, from the time of ancient Athens, where most public officials were selected by lot and also noting military draftees in the United States were selected randomly from the Civil War until the Vietnam War). Imposing a death sentence and warrant selection are quite different constitutionally. *McCleskey*; *Furman v. Georgia*, 408 U.S. 238 (1973); and *Gregg v. Georgia*, 428 U.S. 153

(1976) cannot be applied to warrant selection. It is pure speculation that there even is an Eighth Amendment arbitrariness component to warrant selection. The attack on the Governor's warrant selection process based on the Eighth Amendment is a speculative attack, at best, which is what the Supreme Court condemned in *Bucklew*. Thus, the complaint should be dismissed under *Bucklew*.

Accordingly, this Court should dismiss the complaint as *Heck* barred. Alternatively, the complaint should be dismissed for failure to state a claim or dismissed pursuant to *Bucklew*.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL OF FLORIDA

/s/ *Charmaine Millsaps*
CHARMAINE M. MILLSAPS
SENIOR ASSISTANT ATTORNEY GENERAL
FLORIDA BAR NO. 00989134
OFFICE OF THE ATTORNEY GENERAL
THE CAPITOL, PL-01
TALLAHASSEE, FL 32399-1050
(850) 414-3300

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY that the foregoing DEFENDANT'S MOTION TO DISMISS contains 4,163 words, excluding the case style and certificates, which is less than the 8,000 words permitted for motions and memorandums in opposition to motions under the Northern District's Local Rules. See Loc. R. 7.1(F) (N.D. Fla.).

/s/ *Charmaine Millsaps*
Charmaine M. Millsaps
Senior Assistant Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing DEFENDANT'S MOTION TO DISMISS has been furnished by CM/ECF to all counsel of record including CHRISTINA MATHIESON, Assistant Federal Public Defender of CHU-N, 227 N. Bronough Street, Suite 4200, Tallahassee, FL 32301-1300; phone: (850) 942-8818; email: christina_mathieson@fd.org this  4th  day of August, 2025.

/s/ *Charmaine Millsaps*
Charmaine M. Millsaps
Senior Assistant Attorney General